AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

**SOUTHERN** _____ **DISTRICT OF** _____ **NEW YORK** _____

ELIZABETH VAN PELT

## SUMMONS IN A CIVIL CASE

### V.

MTV NETWORKS, et al.

CASE NUMBER:

# 05 CV 10735

JUDGE STEIN

TO: (Name and address of defendant)

SEE ADDENDUM

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Law Offices of
Frederick K. Brewington
50 Clinton Street
Hempstead, New York 11550

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

DEC 2 2 2005

CLERK

DATE

(BY) DEPUTY CLERK

## ADDENDUM

MTV Networks
1515 Broadway, 2nd floor
New York, New York 10036

VIACOM International, Inc.
1515 Broadway, 2nd floor
New York, New York 10036

Beth Matthews
1515 Broadway, 2nd floor
New York, New York 10036

Virginia Lazalde McPherson
1515 Broadway, 2nd floor
New York, New York 10036

Sandy Ashendorff
1515 Broadway, 2nd floor
New York, New York 10036

Ruth Cheng
1515 Broadway, 2nd floor
New York, New York 10036

Donald Silvey
1515 Broadway, 2nd floor
New York, New York 10036

George Cheeks
1515 Broadway, 2nd floor
New York, New York 10036

**05 CV 10735**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ELIZABETH VANPELT,

                              Plaintiff,

       -against-

MTV NETWORKS, VIACOM INTERNATIONAL INC.,
BETH MATTHEWS, in her official and individual capacity
VIRGINIA LAZALDE MCPHERSON, in her official and
individualcapacity, SANDY ASHENDORFF, in her
official and individual capacity,  RUTH CHENG, in her
official and individual capacity DONALD SILVEY,
in his official and individual capacity, GEORGE CHEEKS,
in his official and individual capacity.

                        Defendants.
-----------------------------------------------------------------------X

**Docket No.:**

**COMPLAINT**



*__Jury Trial is Demanded__*

     **PLAINTIFF ELIZABETH VANPELT,** by her attorneys **THE LAW OFFICES OF FREDERICK K. BREWINGTON,** as and for her Complaint against the Defendants respectfully sets forth:

## PRELIMINARY STATEMENT

    1.    This is a civil action seeking monetary relief (including past and on going economic loss), injunctive relief, declaratory judgment, compensatory and punitive damages, disbursements, costs and fees for violations of the Plaintiff's rights, brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (as amended) and the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), New York State's Human Rights Law, Executive Law § 296, and Breach of Contract.

    2.    Specifically, the Plaintiff alleges that the Defendants negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiff of employment, position, title and pay through misrepresentation, misinformation, harassment and

character assassination.

3.     Plaintiff, ELIZABETH VANPELT, alleges that Defendants purposefully and intentionally discriminated against Plaintiff based upon her gender and her pregnancy as well as opposing discriminatory actions and practices.

4.     Said acts were done knowingly, purposely, and with all intentions of depriving Plaintiff of her right to be free of discrimination within her employment.

<h3 style="text-align:center"><strong>JURISDICTIONAL VENUE</strong></h3>

5.     Jurisdiction of this court is invoked under 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000(e)-5(f). This Court is requested to exercise pendant jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367.

6.     Venue herein is proper under 28 U.S.C. Section 1391 (b); the cause of action arose in the Southern District of New York,  the Plaintiff resides in New York County and upon information and belief, all parties currently reside or maintain offices in New York County.

7.     Prior hereto, on November 25, 2003, Plaintiff filed a Charge of Discrimination with the New York State Division of Human Rights under Charge number 2-E-S-03-3507800 and cross filed with the United States Equal Employment Opportunity Commission, (hereinafter "EEOC), charge number 16GA403806 against Defendant MTV Networks, VIACOM INTERNATIONAL INC. alleging unlawful discriminatory practice relating to employment because of gender and pregnancy discrimination.

8.     On or about September 21, 2005,  a notice of Right to Sue Within 90 Days, issued by the U.S. Department of Justice with regard to EEOC Charge No. 160-2004-02153 (copy annexed hereto) was mailed to the Plaintiff. The notice of Right to Sue Within 90 Days was received by the Plaintiff on or about September 24, 2005. As of the filing date of this complaint, ninety days from the date of receipt of the Notice of Right to Sue has not yet passed.

2

## PARTIES

9.    Plaintiff, ELIZABETH VANPELT, is a woman who resides in New York County and is an employee of the Defendant MTVN, a subsidiary of VIACOM International Inc.

10.    Defendant MTVN is a subsidiary of VIACOM INTERNATIONAL Inc., located in New York County. MTV Networks is a company that owns and operates several domestic and international cable networks including MTV , VHI Nickelodeon, TV land Noggin, Spike, County Music Television, MTVU, MTV2, Logo and Comedy Central.

11.    Defendant VIACOM INTERNATIONAL INC., is a global media corporation with investments and/or interest in various media including broadcast and cable television, radio, advertising online. The Defendant VIACOM also creates, promotes and distributes entertainment, news sports, music and comedy. VIACOM business entities and/or subsidiaries include CBS, MTVN, BET, Paramount Pictures, Infinity Broadcasting, Viacom Outdoor, King World,, Showtime and Simon and Schuster.

12.    Defendant BETH MATTHEWS, is an employee and Vice President, Business and Legal Affairs division of MTVN.

13.    Defendant VIRGINIA LAZALDE MCPHERSON, is an employee and Vice President, Business and legal Affairs division of MTVN.

14.    Defendant SANDY ASHENDORFF, is an employee in the Business and Legal Affairs division of MTVN.

15.    Defendant RUTH CHENG, is an employee in the Human Resources division of MTVN.

16.    Defendant DONALD SILVEY, Senior Vice President, New Business Development and Programing Enterprises division of MTVN.

3

17.     Defendant GEORGE CHEEKS, head of the Business and Legal Affairs division of
MTVN.

## **FACTUAL ALLEGATIONS**

18.     Plaintiff ELIZABETH VANPELT is a woman. During the relevant times of this
complaint, Plaintiff was pregnant from October 2002 till mid July 2003 when she gave birth.

19.     Plaintiff has been employed by MTVN for the past 12 years and currently serves as
director of Contract Manager for the MTV: Music Television Network. During the relevant times of
this complaint Plaintiff held the position of contracts manager in the Business and Legal Affairs unit
of MTVN. Plaintiff held that position from July 2000 till December 2003.

20.     On or about February 2003, Plaintiff VANPELT announced to her employers Sean
Johnson, George Cheeks that she was four months pregnant. Based upon her physical appearance,
it was also obvious to everyone in Plaintiff's department as to her pregnant condition.

21.     On or about December 2002 or January 2003, MTVN posted for the position of
contract manager for College Television Network, (CTN) a newly acquired station now renamed
MTVU.

22.     On or about March 2003 Plaintiff VANPELT applied for the posted position of
contract manager for College Television Network, (CTN) a newly acquired station now renamed
MTVU, a position for which she was extremely qualified.

23.     Prior to applying for the position, Plaintiff was told by Defendant Beth Matthews (one
of the hiring attorneys) in the elevator  that she was having a hard time finding qualified candidates
for the position. She implied that the level of potential candidates with the needed skills level was
limited.

4

24.     On or about March 2003, while visibly pregnant, Plaintiff VANPELT interviewed for the position of contract manager for College Television Network (now MTVU),

25.     Plaintiff VANPELT interviewed with members of the Business and Legal Affairs Department, Beth Matthews, Virginia Lazalde McPherson, Business and Legal Affairs Department, Sandy Ashendorff, Affiliate Sales and Marketing, and Ruth Cheng, a representative from Human Resources.

26.     Plaintiff VANPELT was then scheduled to interview with Donald Silvey, an MTV executive who later canceled his interview with Plaintiff.

27.     Upon information and belief, Donald Silvey, Senior Vice President, MTV New Business Development and Programing Enterprises, cancelled his interview via email with Plaintiff VANPELT, rather than speak with Plaintiff about her interest to be considered for the position. Mr. Silvey instead wished Plaintiff VANPELT luck with her impending motherhood and stated that both "Beth and Sandy should make the decision".

28.     During Plaintiff's first meeting with Defendant Beth Matthews regarding the position, in an effort to convince Plaintiff VANPELT from applying for the position, Defendant Matthews told Plaintiff that she would not feel comfortable moving Plaintiff VANPELT into the new position unless she could guarantee growth for Plaintiff in the position and therefore it would be better for Plaintiff to stay in her current position and try and get promoted. This statement was inaccurate and misleading to Plaintiff as the individual who was hired to the position was hired at the director level, a level that would have resulted in a promotion for Plaintiff.

29.     During these interviews for the CTN contract manager position, Plaintiff VANPELT was questioned extensively about her interest in the new position and each interviewer attempted to

5

convince her not to apply for the position, despite excellent performance reviews and her years of experience.

30.    Defendant Matthews, Vice President, MTV Business and Legal Affairs asked Plaintiff VANPELT her due date and whether or not she was definitely returning to work after maternity leave in the midst of Plaintiff's interview.

31.    Another interviewer, Sandy Ashendorff, visibly surprised to see that Plaintiff VANPELT was pregnant when Plaintiff arrived for the interview, asked her why she wanted to move to the new position. During the interview, Defendant Ashendorff kept saying that Plaintiff's then current position was "so interesting", in an effort to dissuade Plaintiff from applying for the posted position.

32.    In a further attempt to dissuaded her, another interviewer, Ruth Cheng of Human Resources, told Plaintiff VANPELT that the position would require extensive data entry of contract rights and summaries and suggested that it was beneath Plaintiff's skills level and that there would be no administrative support to assist Plaintiff with this work.

33.    Virginia Lazalde McPherson, Vice President, Business and legal Affairs, yet another interviewer, told Plaintiff VANPELT  that the company could hire "anyone" from the outside for the new position and that Plaintiff VANPELT would "be hard to replace" since Plaintiff had so much experience and "performed the work of an attorney."

34.    After applying for the position, Defendant Beth Matthews told Plaintiff VANPELT that she was one of three final candidates for the position. The other final candidates were Gail Hecht (a former employee of the Business & Legal Affairs Deptment) and a friend of Defendant Virginia Lazalde McPherson (another hiring attorney for the open position).

6

35.    Thereafter, the position was awarded to Bahareh Kamali, an applicant from outside of the company, who was not pregnant. Even though the job was posted as a "contract manager" Ms. Kamali was placed in the position as a director instead of a contract manager. On information and belief, Ms. Kamali was provided with administrative support to assist her in performing data entry work that Defendant Cheng told Plaintiff would not be provided with the position.

36.    Ms. Kamali was also given a window office which is customary for directors in Business and legal affairs. On information and belief Ms. Kamali was afforded a higher profile presence with her client group, and on information and belief was allowed to attend important meetings and was given more exposure. Such exposure is essential at MTVN and with Business and Legal Affairs for further career growth.

37.    Plaintiff VANPELT applied for the contract manager position, because even though it required Plaintiff to start from the bottom, Plaintiff would be building a network and would be exposed to more opportunities and would be able to be promoted and excel professionally.

38.    In her former and current position, Plaintiff VANPELT is limited in her ability to experience growth in her career and is limited by the options given to her. The opportunities to perform diverse projects are fewer than what Ms. Kamali has been given. Instead, Plaintiff continues to support areas that cannot offer any long term benefits.

39.    On information and belief, Gail Hecht, did not apply for the position. Rather Defendant Beth Matthews called her to recruit her in for the position 2003 . Ms. Hecht recently came back on or about October 2005 to work for Beth Matthews as a Director. This opportunity was not offered to Plaintiff.

40.    Plaintiff VANPELT was told by George Cheeks, head of the Business Affairs

7

and Legal department, that he wanted to hire a more junior person for the position and agreed that Plaintiff VANPELT should be promoted from her present position as contract manager for MTV, to a director position due to the level of work she performed, as well as Plaintiff's excellent work performance. Plaintiff was not promoted as promised.

41.     On or about April 2003, Plaintiff VANPELT had a second meeting with George Cheeks during which he asked Plaintiff if she was still interested in the CTN position. Plaintiff VANPELT responded that she was interested in the position.

42.     Upon hearing her response, during that meeting Mr. Cheeks said he may be able to promote the Plaintiff to a director in that same position also.

43.     Based upon this discussion with Plaintiff and Defendant Cheeks, and the fact that the posting for the position with CTN was posted for a contract manager, Plaintiff understood that she would be promoted to director either in her current title or in the new position.

44.     Plaintiff VANPELT was never told, nor were any postings made regarding a change in title for the CTN position from contract manager to director.

45.     On or about April 2003, Plaintiff VANPELT met with George Cheeks again and he informed Plaintiff that she would not receive the CTN posted position, and in an attempt to appease her, Defendant Cheeks told Plaintiff VANPELT that he would recommend that she be promoted to director after compensation reviews. This was not the position that Plaintiff VANPELT sought.

46.     In fact, at the time of this April 2003 conversation with Plaintiff and Mr. Cheeks, Defendant Cheeks informed Plaintiff VANPELT that he could not promote Plaintiff until after the compensation reviews were completed and implied that there was a freeze on promotions.

47.     Mr. Cheeks told Plaintiff VANPELT that the compensation reviews would be finished

8

in a month. This was not an accurate statement.

48.     As of August 2003, four months after Plaintiff VANPELT had her conversation with Defendant Cheeks and although compensation reviews were not then completed, two (2) individuals within MTVN Business and Legal Affairs Department were promoted. On information and belief, Michelle Baynes was promoted from assistant to a coordinator. Ms. Baynes was not pregnant or on information and belief was she a mother at that time. Plaintiff VANPELT, despite her qualifications was not promoted.

49.     The Defendants MTV and VIACOM INTERNATIONAL Inc., hired a female who was not pregnant for the position.

50.     Prior to this time, the practice and custom at MTVN was to select someone who was already employed with the company for such a position. Upon information and belief, hiring someone from the outside for a director position in this department had never occurred in the 10 years (up to 2003) that Plaintiff had been employed by the company.

51.     Upon information and belief, the job posting for a "contract manager" position was not changed or amended to being for a "director".

52.     On or about May 13, 2003, on being told by a friend that the position that Plaintiff had applied for, had been given to someone from outside the company and at the director level, Plaintiff VANPELT physically experienced an emotional breakdown.

53.     Plaintiff VANPELT began to cry uncontrollably in shock and disbelief that she had been passed over for the position for which she was extremely qualified. Plaintiff was additionally shocked and dismayed that the position had been filled with someone from outside the company and at the Director level, who was not pregnant.

9

54.     This position was an opportunity for Plaintiff to be promoted to a director level position, a position that Plaintiff VANPELT had earned through her hard work, involving long hours, and which was promised to her by management.

55.     Plaintiff VANPELT was passed over because she was pregnant coupled with her new family status and Defendants stated concern that she would not return to work after giving birth; and/or that if she did return to work she would not be able to effectively perform her job and maintain a family at the same time; and/or that Plaintiff VANPELT would work one day a week from home after maternity leave; and/or that Plaintiff VANPELT may be unable to consistently work nights and week-ends.

56.     When Beth Matthews called Plaintiff VANPELT to inform her that they had offered someone else the position, she also told Plaintiff VANPELT that the decision had nothing to do with her abilities to perform the job with her current experience.

57.     One of Plaintiff VANPELT's former supervisors, Sean Johnson, told Plaintiff that the Defenndants did not offer Plaintiff VANPELT the position since they did not think that she was coming back to work after her maternity leave ended and that all the attorneys in the department were asked to vote either for the Plaintiff VANPELT or the new person who was in fact selected.

58.     Plaintiff became upset and distraught at being passed over for the posted contract manager position and which was converted to a director level position, particularly in light of all of the conversations that took place during each interview and being told that the position would not be as complex as her current position and later being promised by Defendant Cheeks that she would be promoted to a director level position.

59.     Plaintiff had been told that her work was excellent but still she was not chosen for the

10

position nor promoted to the position, however no reason was given.

60.     The next day Plaintiff VANPELT spoke with David Sussman, General Counsel for MTV Networks, regarding being passed over for the position with CTN and that the position was not posted as a director level position.

61.     Mr. Sussman told Plaintiff "to be calm" and "not to worry about the job", "why do you want to be a director for CTN in May 2003 versus a future director for MTV?"

62.     Mr. Sussman  told Plaintiff not to focus on the job any longer as it was no longer available and that Plaintiff should be looking **"forward to being a mother"**.

63.     Plaintiff found this comment, as she did the others, to be offensive and discriminatory.

64.     When Plaintiff VANPELT questioned the company's decision to hire someone else from outside the company and at the director level, Plaintiff was subjected to unfair criticism and threatening comments by George Cheeks, who said to Plaintiff "If you don't like the division you should leave." He added that you will never be the type of person who will ever be happy."

65.     When Plaintiff VANPELT questioned George Cheeks, about his statements, he responded that if Plaintiff did not like the decision Plaintiff could leave the company and go "work for Oxygen ( which is a cable television station focused on programing for  women) it maybe a better place for you".

66.     In addition, in response to Plaintiff VANPELT's inquires, Mr. Cheeks mentioned to her that he was passed over once for a promotion and that a female lawyer who had returned back to work after her maternity leave and only working four-day work weeks, was given the promotion.

67.     This comment was intended to make the Plaintiff go along with and accept the discrimination to which she was being subjected.

11

68.     Plaintiff was also told by Defendant Cheeks that the job for which Plaintiff had interviewed was "less complex and challenging" and he promised to recommend Plaintiff for a director position if Plaintiff could prove to be a team player and perform work that Plaintiff had declined to do while in her pregnant condition as it involved substantial amounts of overtime. Mr Cheeks suggested that he would then promote Plaintiff.

69.     As Plaintiff VANPELT continued to question management about being passed over for the position, she was referred to Ruth Cheng in Human Resources who told Plaintiff that management had reservations about her ability to perform under stress as well as handle stress. As stated previously, Plaintiff VANPELT had excellent performance reviews and was never told, either in writing or other wise that the Defendants were concerned with her ability to handle stress.

70.     On or about May 2003, Ruth Cheng also stated to Plaintiff VANPELT that the CTN position was not a director level position until after the final candidate(s) were identified and hired.

71.     Long before Plaintiff's departure on maternity leave Plaintiff was slowly stripped of her duties as Contract Manager at MTVN. In particular, certain functions that Plaintiff valued performing were taken away from her once Plaintiff VANPELT informed Lance McPherson, an attorney that Plaintiff assisted, that she was pregnant and could not travel to Los Angeles. Mr. McPherson immediately began to give Plaintiff VANPELT's work to another employee. The work that was taken away was in the area of high profile programing for big shows such MTVN's Video Music Awards and Movie Awards. This was work that Plaintiff was available to do, willing to do and capable of doing.

72.     These functions were assigned to Tanya Guzman, an individual who is lower level personnel, not qualified to perform the position and who was not pregnant.

12

73.    Ms. Guzman continues to perform these duties assigned to her by Defendants despite Plaintiff's return to work return to work on September 2003.  In addition Plaintiff's other duties were also given to Jeff Schneider,  male, an attorney in Los Angeles, California, who was new to the contracts division of the company and did not have the experience that Plaintiff possessed.

74.    On or about June 12, 2003, Plaintiff was given a surprise baby shower by Defendant Beth Mathews and George Cheeks, members of her department with whom Plaintiff had not spoken with since she was passed over for the position,

75.    Later that evening due to the trauma associated with how she was being treated Plaintiff was caused to suffer. Defendants Beth Mathews and George Cheeks, who Plaintiff felt had betrayed her, and continued to treat her in an unfair, demeaning and discriminatory manner, were present and laughed and joked about Plaintiff causing her serious anguish.  As a result, Plaintiff VANPELT  encountered problems with her pregnancy and was rushed to the hospital where she was diagnosed with placenta abrupture and immediately hospitalized for four days.  Plaintiff was later placed on immediate bed rest for the remainder of her pregnancy.

76.    Despite the bed rest and medications, on or about Plaintiff's due date her placenta again ruptured and Plaintiff was again rushed to the hospital where an emergency caesarean section was done in order to save her and her child.

77.    On or before September 10, 2003, Ms. VANPELT's attorney contacted Defendants about their wrongful treatment of Plaintiff.

78.    Since Plaintiff's  return to work from maternity leave, in September, 2003, and her complaining that she has been discriminated against Plaintiff continues to suffer stress and depression from working in a hostile work atmosphere where Plaintiff is constantly retaliated against

13

and harassed to resign her employment upon receiving a letter from Plaintiff's first attorney concerning these issues on or about September 2003. Upon information and belief, the letter was found in the fax machine, photocopied and circulated among staff.

79.     Since Plaintiff's return from maternity leave, September 2003, Plaintiff is forced to function in a hostile environment as a result of complaining and questioning her employers discriminatory actions towards her.

80.     Since Plaintiff VANPELT's return from maternity leave, on or about September 29, 2003, for approximately four weeks Plaintiff was sent home each week on an extended maternity leave pending a decision on her employment status.

81.     After refusing to yield to the pressure, and not agree to drop her Charge of Discrimination (which was filed on November 25, 2003) in December 2003, Plaintiff VANPELT was promoted to Director, Contract Management for the Business and Legal Affairs at MTVN. This promotion had nothing to do with her previous requests.

82.     Plaintiff VANPELT was promoted pursuant to a department wide compensation review study that found in essence that certain employees were not being paid appropriately for the work they performed when compared with certain other employees that were being paid higher.

83.     Plaintiff VANPELT'S "promotion" was not in response to her seeking a promotion to a director position. This was not the position Plaintiff VANPELT sought. Rather it was a position into which she was placed based upon the results of the compensation review study.

84.     Plaintiff's promotion to a director position, places her in the correct position she should have been in without a compensation review study and therefore does not rectify the discriminatory treatment Plaintiff was subjected. Defendants failure to hire and failure to promote

14

her because she was pregnant left her in a lower position at the time of the mandatory promotion and thus she remains below the level she should be in.

85.     Despite this promotion, to director, Plaintiff VANPELT has not been provided with a window office after being on a waiting list for 5 years. Upon information and belief, Ms. Kamali has had two window offices since being employed with the Defendants. Plaintiff VANPELT is still in an internal office (which is customary for manager level and below in Business & Legal Affairs).

86.     In the past year, Plaintiff VANPELT has been promised with the opportunity to work on more higher profile projects, however, Plaintiff continues to support News and On-air promotions work.

87.     The negative discriminatory treatment continues to impact the Plaintiff. She is harmed and has not been compensated for the economic, emotional, physical and other injuries she has suffered.

### AS AND FOR A FIRST COUNT

### Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e

### The Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k)

88.     Plaintiff repeats and reiterates the allegations set forth in paragraph 1 through 88 inclusive of this complaint, with the same force and effect as though herein fully set forth herein.

89.     The Defendants MTVN and VIACOM INTERNATIONAL INC., through its agents and employees, discriminated against the Plaintiff in her employment based on Plaintiff's gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended and in violation of the Pregnancy Discrimination Act.

90.     As a direct result of said acts, Plaintiff VANPELT has suffered and continues to suffer

15

loss of income, loss of other employment benefits and has suffered and continues to suffer distress, humiliation, embarrassment, great financial expense and damage to her reputation.

91.    Plaintiff VANPELT who was pregnant from October 2002 to July 2003, was not accorded the same rights and benefits as other employees that were not pregnant.

92.    Defendants refused to hire Plaintiff VANPELT for the posted position or to promote her to a director in that position because she was pregnant.

93.    Defendants violated public policy and federal discrimination statutes in discriminating against Plaintiff VANPELT because of her gender and because she was pregnant, in violation of title VII and the Pregnancy Discrimination Act.

94.    As a result of defendants acts, Plaintiff is entitled to the maximum monetary damages and penalties available by law, punitive damages as well as costs and attorneys fees.

**AS AND FOR A SECOND COUNT:**

**New York State Executive Law § 296 (Human Rights Law)**

95.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 93 inclusive of this complaint, with the same force and effect as though fully set forth herein.

96.    Defendants wrongfully discriminated, on the basis of gender against Plaintiff VANPELT in the terms, conditions, privileges, and compensation of her employment, and in failing to hire, promote, and compensate her during her employment with the Defendants, all in violation of New York's Executive Law § 296.

97.    Defendant MTVN and VIACOM INTERNATIONAL INC. knew in advance of their occurrence, of the discriminatory action taken by its agents, specifically George Cheeks, Beth

16

Matthews, Sandy Ashendorff, Virginia Lazalde McPherson and Ruth Cheng, against the Plaintiff but negligently, recklessly and intentionally failed to prevent such acts.

98.    Defendants Beth Matthews, Sandy Ashendorff, Virginia Lazalde McPherson, Ruth Cheng, Donald Silvey, and George Cheeks all knew that Plaintiff VANPELT was pregnant at the time that she applied for the posted position of contract manager for CTN.

99.    Plaintiff VANPELT was qualified for the position.

100.    Defendants Beth Matthews, Sandy Ashendorff, Virginia Lazalde McPherson, Ruth Cheng, Donald Silvey, and George Cheeks, served as the decision makers who failed to hire Plaintiff VANPELT for the posted position of contract manager because she was pregnant and also failed to promote her to the director position after the contract position was converted to a director level position.

101.    Upon information and belief, Defendants Matthews, Ashendorff, Lazalde McPherson, Cheng, Silvey and Cheeks failed to hire and/or promote Plaintiff VANPELT for the position because of their stated belief that Plaintiff VANPELt would not return to work after giving birth; and/or that if she did return to work she would not be able to effectively perform her job and maintain a family at the same time; and/or that Plaintiff VANPELT would work one day a week from home after maternity leave; and/or that Plaintiff VANPELT may be unable to consistently work nights and weekends.

102.    Defendants Matthews, Ashendorff, Lazalde McPherson, Cheng, Silvey and Cheeks hired Bahareh Kamali, an applicant from outside of the company, who was not pregnant. Even though the job was posted as a "contract manager" Ms. Kamali was placed in the position as a director instead of a contract manager.

17

103.    Upon information and belief, Defendants Matthews, Ashendorff, Lazalde McPherson, Cheng, Silvey and Cheeks hiring anyone from outside the company for a director position in this department had never occurred in the 10 years (up to 2003) that Plaintiff had been employed by the company

104.    Upon information and belief, Defendants Matthews, Ashendorff, Lazalde McPherson, Cheng, Silvey and Cheeks were provided with copies of Defendant MTVN and VIACOM INTERNATIONAL INC.'s business code of conduct handbook which prohibits discrimination in the employment process.

105.    The Defendants cannot articulate a legitimate, non-discriminatory business reason for its failure to hire and promote Ms. VANPELT while she was pregnant.

106.    Upon information and belief, Defendant MTVN and VIACOM INTERNATIONAL INC. were aware that illegal and discriminatory actions were and would be taken against the Plaintiff but took no actions to prevent such conduct, and thereby condoned such adverse acts taken against the Plaintiff.

107.    Upon information and belief, Defendants Matthews, Ashendorff, Lazalde McPherson, Cheng, Silvey and Cheeks were aware that they were committing illegal and discriminatory actions were and that these actions would be taken against the Plaintiff but neither of them respectively took any actions to prevent such conduct, and thereby condoned such adverse acts taken against the Plaintiff.

108.    In fact, Defendant Ruth Cheng, during Plaintiff's interview for the position told Plaintiff VANPELT that the position would require extensive data entry of contract rights and summaries and suggested that it was beneath Plaintiff's skills level and that there would be no

18

administrative support to assist Plaintiff with this work.

109.     On information and belief, Ms. Kamali was provided with such administrative support to assist her in performing such work.

110.     Defendants violated public policy and state law in discriminating against Plaintiff VANPELT because of her gender and because she was pregnant.

111.     As a result of Defendants acts, Plaintiff suffered and is entitled to a sum in excess of $5,000,000 in compensatory damages, plus any damages allowed for punitive damages.

## AS AND FOR A THIRD COUNT

## BREACH OF CONTRACT

112.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 110 inclusive of this complaint, with the same force and effect as though fully set forth herein.

113.     The Defendant, MTVN, VIACOM INTERNATIONAL INC., extended an offer of employment to Plaintiff which carried with it, the implied promises that Plaintiff would be treated fairly and in good faith and not discriminated against due to her gender, specifically during the course of her pregnancy, during the course of her employment with the Defendants.

114.     Defendant Cheeks offered to promote Plaintiff to a director in the posted position and/or to a director in her then current position.

115.     Plaintiff VANPELT was told by George Cheeks, head of the Business Affairs and Legal department, that he wanted to hire a more junior person for the position and agreed that Plaintiff VANPELT should be promoted from her present position as contract manager for MTV, to a director position due to the level of work she performed, as well as Plaintiff's excellent work

19

performance. Plaintiff was not promoted as promised.

116.   On or about April 2003, Plaintiff VANPELT had a second meeting with George Cheeks during which he asked Plaintiff if she was still interested in the CTN  position.  Plaintiff VANPELT  responded that she was interested in the position.

117.   Upon hearing her response, during that meeting Mr. Cheeks said he may be able to promote the Plaintiff to a director in that same position also.

118.   Based upon this discussion with Plaintiff and Defendant Cheeks, and the fact that the posting for the position with CTN was posted for a contract manager, Plaintiff understood that she would be either hired to the new position and/or promoted to director either in her current title or in the new position.  Further, she believed that the process would be fair and non-discriminatory.

119.   Plaintiff VANPELT was not hired or promoted into the posted position nor promoted within her then current title.

120.   The terms and statements contained in Defendants' business conduct code created an implied contract with the Plaintiff, that Defendants would not unlawfully discriminate against the Plaintiff during the employment relationship with respect to its personnel decisions.

121.   Defendants' implied promises carried a duty to deal with the Plaintiff  in good faith with respect to the terms and conditions of her employment.

122.   The Plaintiff accepted the offer of employment and its implied promises.

123.   The Plaintiff performed in an exemplary manner throughout the duration of her employment with the Defendant MTVN and VIACOM INTERNATIONAL, INC.

124.   The Defendants breached their duties to the Plaintiff under the implied contract when they failed to hire, promote and compensate the Plaintiff in a manner which reflected her individual

20

effort and achievement as well as length of service, when they failed to hire, promote and compensate Plaintiff VANPELT when they wrongfully altered the terms and conditions of the Plaintiff's employment with the Defendants because she was female and pregnant and when they misrepresented to the Plaintiff the reasons for their failure to hire and promote the Plaintiff.

125.    As a result of Defendants acts, Plaintiff suffered and is entitled to a sum in excess of $5,000,000 in compensatory damages.

## PRAYER FOR RELIEF

Plaintiff requests judgment as follows:

a.      First Count: for a sum equal to the maximum amount of damages permitted by law;

b.      Second Count: in excess of $5,000,000, in compensatory damages, and a sum for punitive damages;

c.      Third Count: in excess of $5,000,000, in compensatory damages.

d.      Attorney's fees and costs, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k);

g.      A declaratory judgment stating that Defendants wilfully violated Plaintiff's rights secured by federal and state laws as alleged herein;

h.      Injunctive relief: an injunction requiring Defendants to correct all present and past violations of federal and state law as alleged herein; to allow the Plaintiff to be promoted and compensated to the position from which Defendants' failed to hire and promote the Plaintiff; to enjoin the Defendants from continuing to act in violation of federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws; and

i.      An order granting such other legal and equitable relief as the court deems just and proper.

## PLAINTIFF DEMANDS A TRIAL BY JURY

21

Dated: Hempstead, New York
      December 22, 2005

LAW OFFICES OF
FREDERICK K. BREWINGTON

By:    *[signature]*

      WENDY PELLE-BEER (WPB-0831)
      *Attorneys for Plaintiff*
      50 Clinton Street, Suite 501
      Hempstead, New York 11550
      (516) 489-6959

22

Docket No.: CV-05-10735

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

ELIZABETH VANPELT,

                       Plaintiff,

       -against-

MTV NETWORKS, VIACOM INTERNATIONAL INC.,
BETH MATTHEWS, in her official and individual capacity
VIRGINIA LAZALDE MCPHERSON, in her official and
individualcapacity, SANDY ASHENDORFF, in her
official and individual capacity, RUTH CHENG, in her
official and individual capacity DONALD SILVEY,
in his official and individual capacity, GEORGE CHEEKS,
in his official and individual capacity.

                       Defendants.

-----------------------------------------------------------X

# COMPLAINT

The Law Offices of
FREDERICK K. BREWINGTON
50 Clinton Street, Suite 501
Hempstead, New York 11550
(516) 489-6959